

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

KEITH DAVENPORT,
Plaintiff,

v.

**1: 26 CV 6 36**

MEL COLMCILLE GERARD GIBSON;
ICON PRODUCTIONS, LLC;
ROOSEVELT "ROSEY" GRIER

Defendants.

---

CIVIL COMPLAINT
DEMAND FOR JURY TRIAL

Plaintiff Keith Davenport, appearing pro se, alleges the following upon personal knowledge as to himself and upon information and belief as to all other matters:

---

## I. INTRODUCTION

1. This action arises from the alleged unauthorized acquisition, use, adaptation, exploitation, and commercialization of Plaintiff Keith Davenport's original screenplay and dramatic concept concerning the final hours of Jesus Christ.

2. Plaintiff authored an original screenplay during 1992–1993 under the working title "The Man, The Legend, The Life," later also referenced as "Jesus, The Man, The Legend, The Life."

3. Plaintiff's screenplay centered upon a unique dramatic structure emphasizing the suffering of Jesus Christ beginning in the Garden of Gethsemane, combined with flashbacks to earlier portions of Christ's life and ministry.

4. Plaintiff contends that Defendants obtained access to Plaintiff's screenplay through submissions and communications made to Defendant Roosevelt "Rosey" Grier and affiliated entities.

5. Plaintiff further contends that substantial elements of Plaintiff's screenplay concept, structure, sequencing, thematic presentation, and dramatic treatment

were later incorporated into the motion picture "The Passion of the Christ," released in 2004.

6. Plaintiff alleges that Defendants profited substantially from the exploitation of Plaintiff's original work while failing to provide credit, compensation, acknowledgment, or authorization.

7. Plaintiff seeks compensatory damages, disgorgement of profits, punitive damages, declaratory relief, equitable accounting, recognition of authorship interests, and such additional relief as the Court deems proper.

## II. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and applicable federal copyright and intellectual property statutes.

9. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 over related state law claims.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because substantial acts giving rise to the claims occurred within this judicial district and because Plaintiff resides within this district.

11. Plaintiff reserves the right to amend this Complaint to identify additional jurisdictions, parties, or entities involved in the development, production, financing, distribution, licensing, sequel development, or exploitation of "The Passion of the Christ."

## III. PARTIES

12. Plaintiff Keith Davenport is an individual residing in Lexington, North Carolina.

13. Defendant Mel Colmcille Gerard Gibson ("Gibson") is an actor, producer, director, and screenwriter associated with the film "The Passion of the Christ."

14. Defendant Icon Productions, LLC is a production entity associated with the creation, financing, production, and/or distribution of "The Passion of the Christ."

15. Defendant Roosevelt "Rosey" Grier ("Grier") is a former professional football player and public figure who communicated directly with Plaintiff regarding Plaintiff's screenplay.

16. Plaintiff is not presently aware of any additional Defendants in this matter.

## IV. FACTUAL ALLEGATIONS

### A. Creation of Plaintiff's Screenplay

17. During approximately 1992, Plaintiff conceived and authored an original screenplay concerning the life and suffering of Jesus Christ.

18. The screenplay carried the working title "The Man, The Legend, The Life."

19. Plaintiff completed an initial version of the screenplay during approximately early 1993.

20. Plaintiff's screenplay departed from conventional biblical films by focusing intensely on the suffering of Christ beginning in the Garden of Gethsemane rather than beginning at Christ's birth.

21. Plaintiff's screenplay further utilized dramatic flashbacks to portray the earlier ministry and life of Jesus Christ while juxtaposing those events against the suffering surrounding the crucifixion.

22. Plaintiff's screenplay emphasized the innocence of Christ contrasted against graphic suffering and emotional intensity.

23. Plaintiff contends this dramatic structure was unique and uncommon within prior cinematic portrayals of Jesus Christ at that time.

### B. Distribution and Submission of the Screenplay

24. Following completion of the screenplay, Plaintiff attempted to market and produce the project.

25. Plaintiff contacted various entities and individuals including:

a. Trinity Broadcasting Network;
b. ABC;
c. NBC;
d. CBS; and
e. Roosevelt "Rosey" Grier.

26. Plaintiff mailed copies of the screenplay and related materials to Defendant Grier in care of Trinity Broadcasting Network.

27. Defendant Grier subsequently contacted Plaintiff by telephone and discussed the screenplay.

28. During said conversation, Defendant Grier advised Plaintiff to convert the screenplay into a revised screenplay format because the original version contained director's instructions, which Defendant stated he did not understand.

29. Plaintiff complied and completed a revised screenplay format during approximately mid-1993.

30. Plaintiff thereafter mailed the revised screenplay to Defendant Grier.

31. Plaintiff never received further communication regarding production of the screenplay.

32. During approximately late 1993 and early 1994, Plaintiff additionally contacted agencies including the Utah Film Commission in an effort to secure production assistance, filming locations, and production personnel. This included a registered nurse.

33. Plaintiff ultimately tabled active production efforts due to financial and logistical limitations.

34. Plaintiff contends the screenplay was registered with the Writers Guild of America.

35. Plaintiff further retained copies of the screenplay and related materials over the years.

## C. Preservation of Documentary Evidence

36. Plaintiff maintains that he preserved electronic and physical copies of the screenplay.

37. Plaintiff possesses digital files reflecting modification dates predating the release of "The Passion of the Christ."

38. Plaintiff specifically maintains possession of a computer file showing a modification date of September 3, 2001.

39. Plaintiff also preserved correspondence, statements, summaries, and records documenting his claims over a period of years.

40. Plaintiff made written statements concerning these allegations in or about 2007 and on additional occasions thereafter.

## D. Release of "The Passion of the Christ"

41. In 2004, Defendant Gibson released the motion picture "The Passion of the Christ."

42. Plaintiff immediately recognized what Plaintiff believed to be substantial similarities between his screenplay and the released motion picture.

43. Plaintiff contends that "The Passion of the Christ" adopted the same central dramatic focus emphasizing Christ's suffering beginning in Gethsemane.

44. Plaintiff further contends that the film utilized flashback structures and thematic contrasts substantially similar to Plaintiff's screenplay treatment.

45. Plaintiff alleges that Defendants commercially exploited Plaintiff's original concepts and dramatic treatment without authorization.

46. Plaintiff further alleges that Defendants generated substantial profits through the production, distribution, licensing, merchandising, streaming, and continued exploitation of the motion picture and related derivative works including Defendant's plans for a sequel.

47. Plaintiff contends he received no compensation, credit, acknowledgment, royalties, participation, or ownership recognition in connection with the profits derived from the motion picture and related derivative works.

## V. FIRST CAUSE OF ACTION

COPYRIGHT INFRINGEMENT

48. Plaintiff incorporates by reference all preceding paragraphs.

49. Plaintiff is the original creator and author of the screenplay described herein.

50. Plaintiff's screenplay constituted an original work of authorship fixed in a tangible medium of expression.

51. Defendants had access to Plaintiff's screenplay through submissions and communications made to Defendant Grier and related entities.

52. Defendants copied, adapted, used, exploited, and commercially benefited from protected elements of Plaintiff's screenplay.

53. Defendants' acts were intentional, willful, reckless, and undertaken in conscious disregard of Plaintiff's rights.

54. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages including economic damages, loss of authorship recognition, emotional distress, reputational harm, and loss of professional opportunities.

55. Plaintiff is entitled to actual damages, statutory damages where applicable, disgorgement of profits, injunctive relief, attorneys' fees where permitted, and all additional relief authorized by law.

## VI. SECOND CAUSE OF ACTION

FRAUD AND FRAUDULENT CONCEALMENT

56. Plaintiff incorporates by reference all preceding paragraphs.

57. Plaintiff alleges Defendants knowingly concealed Plaintiff's authorship and contributions.

58. Plaintiff further alleges that Defendants knowingly misrepresented the origins of the screenplay and film concepts incorporated into "The Passion of the Christ."

59. Plaintiff relied upon the good faith expectation that his screenplay submissions would not be misappropriated.

60. Defendants' conduct caused substantial damages to Plaintiff.

61. Plaintiff seeks compensatory damages, punitive damages, and all additional relief permitted by law.

## VII. THIRD CAUSE OF ACTION

UNJUST ENRICHMENT

62. Plaintiff incorporates by reference all preceding paragraphs.

63. Defendants obtained substantial financial benefits through exploitation of Plaintiff's work.

64. It would be inequitable and unjust for Defendants to retain those benefits without compensation to Plaintiff.

65. Plaintiff seeks restitution, disgorgement, equitable accounting, and related relief.

## VIII. FOURTH CAUSE OF ACTION

DECLARATORY RELIEF

66. Plaintiff incorporates by reference all preceding paragraphs.

67. An actual controversy exists between the parties concerning authorship, ownership, and rights related to Plaintiff's screenplay.

68. Plaintiff seeks a judicial declaration concerning Plaintiff's authorship interests and the relationship between Plaintiff's screenplay and "The Passion of the Christ."

## IX. DAMAGES

69. Plaintiff has suffered substantial damages including but not limited to:

a. Loss of compensation associated with the alleged unauthorized exploitation of Plaintiff's screenplay and dramatic concepts;

b. Loss of professional recognition and authorship credit associated with a motion picture that generated substantial worldwide commercial revenue;

c. Emotional distress and mental anguish arising from the alleged misappropriation and concealment of Plaintiff's work;

d. Reputational harm and loss of professional opportunities in the entertainment and media industries;

e. Loss of future opportunities associated with sequels, derivative productions, licensing, merchandising, streaming, and related commercial exploitation;

f. Loss of equitable participation in profits generated from "The Passion of the Christ" and related derivative works; and

g. Additional damages to be proven at trial.

70. Upon information and belief, Defendants generated substantial revenues and profits through the production, distribution, licensing, merchandising, sequel development, and continued exploitation of "The Passion of the Christ."

71. Plaintiff seeks compensatory damages in an amount not less than:

**$100,000,000.00**

exclusive of punitive damages, interest, costs, equitable relief, and additional amounts to be determined at trial.

72. Plaintiff further seeks disgorgement of profits attributable to the alleged exploitation of Plaintiff's screenplay concepts and dramatic treatment, including profits derived from sequels, derivative productions, licensing, merchandising, streaming, and related commercial exploitation.

73. Plaintiff further seeks punitive damages due to the alleged willful, intentional, reckless, and fraudulent nature of Defendants' conduct.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

A. For compensatory damages in an amount not less than:

**$100,000,000.00;**

B. For disgorgement of profits attributable to the alleged exploitation of Plaintiff's screenplay and derivative works;

C. For punitive damages in an amount to be determined at trial;

D. For declaratory relief recognizing Plaintiff's authorship interests;

E. For equitable accounting of revenues, profits, licensing agreements, sequel development, derivative productions, merchandising, streaming revenues, and related commercial exploitation;

F. For costs of suit;

G. For pre-judgment and post-judgment interest;

H. For such additional legal and equitable relief as the Court deems just and proper.

## XI. DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

KEITH DAVENPORT
Plaintiff, Pro Se
6000 Oakridge Dr.
Lexington, NC 27295
336-300-1818
mayordavenport@usa.com

Dated: 07/06/2026

Davidson County, State of North Carolina
I certify that the following person(s) Keith Davenport personally appeared before me this day, each acknowledging to me that he or she signed the foregoing document:

Date: 6 July 2026

Notary Public William H. Budde
My commission expires: June 2031

My Comm. Expires JUNE 15, 2031